(64 Misc. Rep. 352.)

### HERBERT et al. v. ROCKLAND COUNTY.

(Supreme Court, Special Term, Rockland County. August 6, 1909.)

1. HIGHWAYS (§ 115*)—REPAIR BY COUNTY—INTERFERENCE WITH USE—LIABILITY.

A county, in the absence of statute, may repair and rebuild a highway without incurring liability to adjacent owners because of obstructions temporarily therein pending the work, or because of any interference with the public use of the highway by the making of reasonable and necessary repairs or improvements.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 358–362; Dec. Dig. § 115.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. HIGHWAYS (§ 115*)—REPAIR—INTERFERENCE WITH USE—LIABILITY OF COUNTY.

The rule that a county cannot escape liability for a duty imposed by law, by letting work to an independent contractor, does not render a county liable for the temporary obstruction of a highway necessary to its repair, for a county is under no obligation to keep a highway open to the public or adjacent owners while ordinary or reasonable repairs are in progress.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 358–362; Dec. Dig. § 115.*]

3. HIGHWAYS (§ 115*)—REPAIR—INTERFERENCE WITH USE—LIABILITY OF COUNTY—"CONTRACTORS."

As a county is under no obligation to keep a highway open to the public or adjacent owners while ordinary or reasonable repairs are in progress, the only liability, if any, is under Laws 1898, p. 218, c. 115, § 11a, as added by Laws 1904, p. 653, c. 298, § 1, whereby the duty of keeping the highway open until the engineer in charge shall certify that it is necessary to close it is placed upon the "contractors," meaning the person having the contract for and actually doing the work.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 358–362; Dec. Dig. § 115.*

For other definitions, see Words and Phrases, vol. 2, pp. 1534–1537; vol. 8, p. 7616.]

4. HIGHWAYS (§ 115*)—REPAIR—INTERFERENCE WITH USE—LIABILITY OF COUNTY.

Failure of a contractor reconstructing a highway to keep it open to the public until the engineer in charge certified to the necessity of closing it was but an incident to the work contracted for and collateral thereto, and the county is not liable for the consequences thereof.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 358–362; Dec. Dig. § 115.*]

Action by Andrew M. Herbert and another against the county of Rockland. Judgment for defendant.

A. D. & A. W. Lent, for plaintiffs.

George A. Blauvelt, for defendant.

TOMPKINS, J. In February, 1906, the board of supervisors of the county of Rockland, acting upon a petition presented by certain taxpayers of the town of Stony Point, determined that public interest required the improvement of the old town highway in said town of Stony Point, leading northerly from Tomkins' Cove, to and beyond Iona Island, under the provisions of the Higbie-Armstrong act (Laws 1898, p. 218, c. 115), and thereafter the state engineer and surveyor approved of said resolution, and caused plans and specifications to be made of the proposed new highway, and estimated the cost thereof at the sum of $105,585.

In August of the same year the board of supervisors adopted a resolution appointing Messrs. Sherwood and Rose as a committee to take charge of the construction of the road, and authorized them to make a bid on behalf of the county to the state for its construction by the county. Thereafter a bid was made by said committee on behalf of the board of supervisors, which was accepted by the state, and the contract for the improvement of the old road and the construction of the new road was awarded by the state engineer and surveyor to the county of Rockland for the sum of $105,585, and pursuant to a resolution adopted by the board of supervisors Mr. Sherwood, as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chairman of the said committee, entered into a written contract in the name of the county of Rockland, with the state engineer and surveyor representing the state, for the building of the new road, for the said sum of $105,585.

On December 7, 1906, Mr. Sherwood, as chairman of said committee, and with the authority of the board of supervisors of the county, and with the consent and approval of the state engineer and surveyor, entered into a contract on behalf of the said county of Rockland, with the Beckwith Company as a subcontractor, for the building of the proposed highway, which contract was identical in form and terms with the contract made between the county and the state. In other words, the county of ·Rockland, after having entered into a contract with the state for the building of the proposed road, sublet the entire contract to the Beckwith Company, and the work was actually done by the Beckwith Company, at a cost of $155,000, which included extra work, and changes and alterations in the original contract, one half of which sum was paid by the state, and the other half by the county of Rockland; the entire sum of $155,000 being paid to the Beckwith Company for the work, and materials used in carrying out the terms of the said contract, and for said extra work. So that the Beckwith Company were the actual builders of the road, and performed all the labor and furnished all the materials that were used in the said work, all of which work was done pursuant to the plans and specifications furnished by the state engineer and surveyor, and under the immediate supervision of an engineer representing the state, who was at all times upon the work, giving instructions and making inspection as the work progressed.

The work was commenced in the spring of 1907, and finished about November, 1908. The plaintiffs were the lessees of a 300-acre tract of mountain and wood land on the west side of the old road, and the new road as it was constructed, situated between Jones' Point on the south, and Iona Island on the north; and it appears that during the years 1904, 1905, and 1906, they cut large quantities of cordwood upon the said premises, which they had sold, or expected to sell to brick manufacturers along the Hudson river, and some of which they had contracted to deliver during the brick-making season of 1907 to one O'Brien at Verplanck's Point. Their claim is that they were prevented from delivering the cordwood to O'Brien and to other customers during the year .1907, and were prevented from removing the cordwood that they had cut during the previous years, from their premises, during the year 1907, by the. work that was done under the said contracts during that year upon the old highway in question and the new highway that was constructed to take its place, and by the closing of the said highway, and by the obstructions and barriers that were placed thereupon, which prevented the plaintiffs from drawing their wood from their said premises, either to the dock at Jones' Point, or to the dock at Iona Island.

It is practically conceded, as I understand it; if not, I shall assume that the only way the plaintiffs had of carting their cordwood from their premises for delivery to their customers was by and over

the road in question, and either by driving over it to Jones' Point on the south, or to Iona Island on the north.

It appears without contradiction that about the 23d of April, 1907, the road to the south of the plaintiffs' premises and leading to Jones' Point was closed on account of the work being done by the Beckwith Company under their contract with the county of Rockland, and that at that time barriers were put up, shutting off the said road to the south of the plaintiffs' premises and excluding the public therefrom. The road to the north was formerly closed by the contractors under the direction of the state engineer and surveyor, about the 1st of October, 1907; but the plaintiffs' claim is that for several months prior to that time it was actually closed by obstructions and excavations in it, that made it impossible to pass over it and, that excluded the plaintiffs and the public therefrom.

This action is brought by the plaintiffs against the county of Rockland to recover the sum of $12,000 damages suffered by them by reason of being deprived of the use of the said public highway during the year 1907, while the repairs and improvements were being made and the work of reconstruction was being carried on, and thereby being prevented from removing their cordwood from their said premises and selling and delivering it to their customers.

It appears that in the spring of 1906 the plaintiffs, or one of them, knew that the new road was to be built, and in the summer of the same year he spoke to the attorney for the board of supervisors about getting his wood out, and asked whether the road would be closed, and was told that the road would be closed. The new road was constructed, and all of the work upon the old and new roads was done in accordance with the plans, specifications, and contracts already referred to, and the obstructions in and excavations upon the road from time to time during the progress of the work were necessary and reasonable in the doing of the work, the purpose of which was to change an old country town road of about six miles in length into a well made and properly graded state road, under the Higbie-Armstrong law.

The foregoing are all the facts that in my opinion are necessary or essential to a proper disposition of the case. The plaintiffs have undoubtedly sustained considerable damage by having their ingress and egress interfered with, and by being prevented from using the said road for the drawing of their wood; but it does not necessarily follow therefrom that they have a cause of action against the county of Rockland. On general principles, and in the absence of any statute on the subject, there would be no question whatever as to the right of the county of Rockland to repair and rebuild the public highway in question without incurring any liability to adjacent property owners by reason of the obstructions temporarily in the road, while the work was being done, or on account of any interference with the public use of the highway, by the making of reasonable and necessary repairs, changes, or improvements.

In the case of Radcliff v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357, where the defendant in grading a street caused an embankment to be dug away, whereby the plaintiff's lands were undermined and caved

in, causing them heavy damage, it was held that, in the absence of proof showing failure to exercise proper care and skill in the execution of the work, no action for damages could be maintained by the adjacent owner, and the court in its opinion said:

"In some instances the landowner will suffer a heavy loss, and this case may perhaps be one of the number; but it is damnum absque injuria, and the owner must bear it. He often gets the benefit for nothing when the value of his land is increased by opening or improving a street or highway, and he must bear the burden in the less common case of the depreciation in value in consequence of the work."

In the case of Transportation Company v. Chicago, 99 U. S. 635, 25 L. Ed. 336, the plaintiff's access to its warehouse from the street was temporarily interfered with by the work of the city in constructing a tunnel along the Chicago river for street purposes. The court said:

"It is undeniable that, in making the improvements of which the plaintiffs complain, the city was the agent of the state and performing a public duty imposed upon it by the Legislature, and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country. * * * The state holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it; but it is the prerogative of the state to be exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing, if it does not protect the agents for improving highways, which the state is compelled to employ."

In the same case the court said:

"Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences might impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action. This is supported by an immense weight of authority."

And this rule was recognized and followed by our Court of Appeals in the case of Sauer v. City of New York, 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717, and it is now the settled law of this state that damages caused to an owner of property abutting on a public street, by reason of the maintenance, repairing, or improving of such street by a municipality are damnum absque injuria, and that, in the absence of carelessness or negligence, or of legislation authorizing it, such an owner is entitled to no relief.

There is no claim in this case that there was any negligence or unskillfulness either on the part of the county or the Beckwith Company who actually did the work, and it must be held that, so far as the county of Rockland acted as the agent of the state in the doing of the work for the improvement of the public highway, there is no liability on its part to the plaintiffs for any consequential damage that they suffered on account of the improvements of the highway, inasmuch as it is not questioned that the work was necessary, reasonable, and proper, and carefully done. So that it follows that there can be no recovery in this action, unless there is some provision of the statute creating liability, or imposing some duty upon the defendant, for a

failure or breach of which, resulting in damage to the plaintiffs, they would be entitled to recovery.

Section 11a of chapter 115, p. 218, of the Laws of 1898, as added by Laws 1904, p. 653, c. 298, § 1, being the law under which these contracts were made and this work was done, provides as follows:

"Whenever a contract has been let for the construction of any such highway in accordance with the provisions of this act, the contractors may, and are hereby authorized to, whenever the engineer in charge of the work on behalf of the state engineer and surveyor, shall certify to the necessity thereof in writing, close any such highway by putting up a sufficient obstruction, and notice to the effect that such highway is closed. * * * Nothing herein contained shall relieve the contractors of the burden of keeping highways under construction, at all times open to the public, until the engineer in charge of the work under the state engineer and surveyor, shall have certified to the necessity of closing such highway and shall have filed such certificate in the office of the clerk of the town or towns within which such highway or a section thereof, is situated."

The plaintiffs' claim is that the county of Rockland, as the "contractors," closed the said highway, and excluded the plaintiffs therefrom before the state engineer and surveyor certified to the necessity thereof in writing, and that the defendant, as the "contractors," failed to keep the said highway open to the public until the engineer in charge of the work under the state engineer and surveyor certified to the necessity of closing such highway.

In the first place, I find as a matter of fact that the highway was not altogether closed to the public, nor were the plaintiffs entirely excluded therefrom by the contractors who were actually engaged in doing the work, until the state engineer and surveyor filed in the town clerk's office certificates showing that it was necessary to close such highway, which certificates were filed in April and October, 1907, although at times prior thereto the road was obstructed in places by excavations, machinery, implements, piles of dirt, and rock; but even assuming that the plaintiffs' use of the highway was interfered with, or even altogether prevented, by the road work that was being done by the Beckwith Company, prior to the making and filing by the state engineer and surveyor of the certificate provided for by the section of the statute above quoted, I do not see how the defendant, the county of Rockland, can be held liable.

All of the work done upon the highway in question, resulting in the obstructions that interfered with the plaintiffs' use of it, was done by the Beckwith Company, which was a firm or corporation engaged in that kind of work, and that had entered into a contract with the county of Rockland for the doing of all the work and the furnishing of all the materials necessary for the carrying out of the terms of the contract originally made by the county of Rockland with the state engineer and surveyor. In other words, the Beckwith Company was an independent contractor, that undertook and agreed to do all of the work originally let by the state to the county of Rockland, and gave a bond to the county of Rockland for the faithful performance of its work, and the Beckwith Company actually did all of the work and furnished all of the materials, and received from the state and the county of Rockland the full value of all such work and materials, and the evidence shows that

the county of Rockland and its board of supervisors did no part of the work in question.

While the rule is that a county, or any municipal body, may not escape liability for a duty that is imposed upon it by law, by letting the work out to, or having it assumed by an independent contractor, that rule does not apply to this case, for the reason that there was no obligation on the part of the county of Rockland to keep this highway open and passable for the use of the public or adjacent landowners while ordinary or necessary repair work was in progress. Such work, as has already been seen, may be done by a county, town, city, or village, without incurring liability for damages thereby, or caused by temporary obstructions made necessary in the prosecution of the work.

In this case the only obligation created by statute to keep the road open during the progress of the work rested upon the "contractors," meaning, in my opinion, the contractors who were actually doing the work. There is no statute or rule of common law that makes a municipal government liable for damages caused by the necessary closing of a road during the making of reasonable repairs, or the doing of proper reconstruction work. Hence the only liability, if any, in this case, is on the part of the contractors, for closing the road before the engineer on the work representing the state engineer and surveyor made and filed his certificate under the section of the statute above quoted.

If the county of Rockland owed the plaintiffs the duty in the first instance of keeping the road open and in fit condition for their use, while the repair work was being done, then it could not absolve itself from liability by delegating the duty to another; but here, inasmuch as there was no obligation on the part of the county in the first instance to protect the plaintiffs from loss, by reason of being deprived of the use of the road while it was being carefully and skillfully rebuilt and repaired, the only liability, if any, exists by virtue of the statute already quoted, and by which the duty of keeping the road open until the necessary certificate is filed is placed upon the "contractors," meaning the person, firm, or corporation having the contract for, and actually doing the work thereunder, which in this case was the Beckwith Company.

The closing of the road by the Beckwith Company was only incidental to the contract work, and the county of Rockland, for whom the Beckwith Company was doing the work under said contract, is not liable for the consequences thereof.

This rule is stated by Judge Clifford, in the case of Water Company v. Ware, 16 Wall. 566, 21 L. Ed. 485, as follows:

"Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employed the contractor and authorizes him to do those acts is equally liable to the injured party."

The only thing that the plaintiffs can complain of in this action as a basis for their claim for damages is that the defendant failed to keep the highway under construction at all times open to the public, until

the engineer in charge of the work under the state engineer and surveyor certified to the necessity of closing such highway and filed such a certificate in the town clerk's office. The plaintiffs' claim can rest upon no other act or omission. That being so, it must follow that the county is not liable, because, in subletting the contract to the Beckwith Company, it employed and authorized that company to rebuild and construct the highway according to the plans and specifications that had already been adopted. It did not, however, employ the Beckwith Company to close the old road, before the state engineer and surveyor should make and file the said certificate; nor did the county contract with the Beckwith Company, or authorize it, to do any act that would unlawfully exclude the plaintiffs or the public from the said highway. On the contrary, the county of Rockland, when it made the contract with the Beckwith Company, had a right to assume that in the performance of the contract work the Beckwith Company would comply with the statute and keep the road open until such time as the state engineer and surveyor would, by his certificate, authorize the closing of it. The closing of the road by the company, at the most, was but an incident to the work contracted for, and collateral to it. The only work contracted for between the county of Rockland and the Beckwith Company was the building of the road, and if, in the progress of that work, the contractors, the Beckwith Company, unlawfully interfered with the use of the road, by violating the provisions of section 11a of chapter 115, p. 218, of the Laws of 1898, as added by Laws 1904, p. 653, c. 298, § 1, the liability, if any, would be on its part, and not on the part of the county. Of course, if there was an obligation on the part of the county to the plaintiffs and the public generally to keep the highway in proper condition for their use during the making of the repairs, then a different question would be presented, and in that event undoubtedly the law would be that the county could not escape liability by contracting the work out to an independent contractor; but there was no such obligation or liability on the defendant's part, either as a county, for the reasons already stated, or because of its original contract with the state, because it did not do or undertake the work, and, if there was any unlawful interference with the plaintiffs' rights, it was by the contractors, the Beckwith Company, and was not a part of the work that the county authorized or contracted with the Beckwith Company to be done.

My conclusions therefore are:

1. That, independent of the statute, there could be no liability on the part of the defendant on account of the closing of the road made necessary by the making of reasonable repairs.

2. That the road was not actually closed, or the plaintiffs' rights materially interfered with, prior to the making and filing of the certificate of the state engineer and surveyor, as provided for by the statute.

3. That if the road was improperly and unlawfully closed, and the plaintiffs' rights interfered with, it was done by the Beckwith Company, who were the "contractors" within the meaning of the statute, and that for their acts in that respect the defendant is not liable.

4. That the defendant is entitled to judgment dismissing the complaint upon the merits, with costs.