(85 South. 31)

NEW FARLEY NAT. BANK v. MONTGOM-
ERY COUNTY. (3 Div. 329.)

(Court of Appeals of Alabama. Oct. 28, 1919.
Rehearing Denied Dec. 16, 1919.)

1. COUNTIES ⊗═▷182—STATUTORY PROHIBITION
AGAINST GRANTING EXTRA COMPENSATION
TO PUBLIC OFFICER, SERVANT, OR "CON-
TRACTOR" DOES NOT PROHIBIT COUNTY FROM
RELEASING BOND PURCHASER FROM PAY-
MENT OF PART OF CONSIDERATION.

Const. 1901, § 68, declaring that the Leg-
islature shall have no power to grant, au-
thorize, or require any county or municipality
to grant any extra compensation to any public
officer, servant, agent, or "contractor," does
not apply to a case where a county agreed that

━━━

a purchaser of its bonds should be released from a portion of the consideration, for the section refers to one rendering personal service to the county, and the purchaser of the bonds, which happened to be a bank can in no sense be deemed a "contractor," which denotes a person undertaking to do specific work for another, using his own means and methods.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contractor.]

2. COUNTIES ⬥⟳182—COUNTY MAY MODIFY EXECUTORY CONTRACT FOR SALE OF ITS BONDS.

While it remains executory, a county which, through its board of revenue, had authority to contract for the sale of bonds, may modify the contract where modification is supported by a consideration.

3. APPEAL AND ERROR ⬥⟳1153—APPELLATE COURT HAVING THE FACTS MAY RENDER DECISION WHICH TRIAL COURT SHOULD HAVE RENDERED.

Where all the facts are before appellate court, it may render the judgment which the trial court should have rendered.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the County of Montgomery against the New Farley National Bank to recover an amount alleged due as a balance on the sale of certain bonds. Judgment for plaintiff, and defendant appeals. Reversed and rendered on original hearing, but later affirmed on mandate from the Supreme Court.

Steiner, Crum & Weil, of Montgomery, for appellant.

No brief came to the Reporter.

A. H. Arrington and John R. Tyson, both of Montgomery, for appellee.

No brief came to the Reporter.

SAMFORD, J. On March 27, 1907, the county of Montgomery, acting through its board of revenue, entered into a contract with the defendant bank for the sale by the county to the bank of $150,000 of road and bridge bonds, to be dated May 1, 1909, maturing 50 years from date, with interest at 4½ per cent. per annum, for which the defendant agreed to pay on delivery at the defendant bank $150,000, accrued interest to date of delivery, and a premium of $3,000; the bonds to be delivered on or before June 1, 1909, or "as soon as they can be prepared and executed by the proper officials, and as soon as the approval of a certain firm of lawyers can be delivered." It was further stipulated that at the time of delivery the county should furnish a certified transcript of all proceedings relating to the issue, together with the original opinion of the attorney approving the bonds. The bonds were to be prepared and printed by the bank at a cost to the county not to exceed $50. The entire transaction to this point was shown by the record of the minutes of the board of revenue of Montgomery county. It further appeared from the minutes of the board that on May 22, 1909, the following proceedings were had:

"Upon motion of Mr. Cook, the New Farley National Bank was relieved of paying interest on the $150,000 after May 22d.

"Upon motion of Dr. Duncan, the money at the New Farley National Bank is to be delivered to the board as demanded.

"Upon motion of Dr. Duncan, Mr. David Fleming, president of the board, was authorized and requested to secure from the safety deposit vault at the First National Bank of this city 50 of the road and bridge bonds belonging to the county, and to make delivery of same to the New Farley National Bank of this city upon payment of $50,000, accrued interest to date upon the whole issue of $150,000, and a premium of $3,000, the amount received to be delivered to the treasurer of said county."

It further appears from the evidence in this record that the bonds were all prepared, signed, and delivered as follows: May 31, $50,000; June 17, $50,000; July 24, $50,000; and that defendant made payment upon delivery as follows: $53,393.75 at the time of the delivery of the first installment, being the bonds at par, plus interest on the entire $150,000 to May 22, and $3,000 premium, delivery and payment being made in accordance with the resolutions of the board under date of May 22, as shown by the minutes of the board of revenue. On this state of facts on a former appeal of this case (Montgomery County v. New Farley National Bank, 200 Ala. 170, 75 South. 918), the Supreme Court reversed the judgment of the lower court, and upon the trial from which this appeal is taken the defendant undertook, by the oral testimony of L. B. Farley, its then president, to prove facts establishing a consideration for the modification of the contract between the bank and the county.

Farley further testified that in accordance with the modified agreement of May 22, 1909, the defendant bank waived the approval of the bond attorneys stipulated in the original agreement, wrote a letter dated May 31, 1909, confirming the modification, and that thereafter, as soon as the county could legally receive the money, the terms of the modified agreement were complied with, the purchase price paid and accepted, and the bonds delivered. Farley's testimony further shows that the bank was ready, willing, and able to have received and paid for the entire issue on May 22, but no offer was made to so deliver the bonds as stipulated by the original agreement, and, further, that no effort was made to go behind the consummation of the modified agreement until the bringing of

this suit in November, 1913, after a complete change in the personnel of the board of revenue.

On the former appeal, based upon the facts there presented, in a suit for the breach of an executory contract, and in which the facts in that record presented an executory contract, as was declared in Brown v. Lowndes County, 201 Ala. 437, 438, 78 South. 815, 816, in which case Mr. Justice Thomas, writing for the court, said, "In the Montgomery County Case, the sale of the county bonds was not concluded, and the agreement dealt with was executory," it was held that the facts disclosed that the parties entered into a valid, binding contract in regard to the sale of $150,000 of the bonds of the county of Montgomery at par, plus interest to date of delivery and a premium of $3,000. It was also held in that case that the release by the county, evidenced by the minutes of the board of revenue under date of May 22, was not shown to have been supported by a valuable consideration, and was therefore a nudum pactum and void. It was then said in the opinion:

"If, as a matter of fact, it can be made to appear that this release of interest was supported by a valuable consideration, opportunity to so disclose should be given to the defendant. If there was such, it cannot be drawn as a reasonable inference from that which here appears. We have therefore concluded to exercise our discretion in favor of a remandment of the cause, and will render no judgment here."

This last holding by the Supreme Court in this case is authority for us to hold that if a consideration for the modified agreement is shown by this record the defendant in the court below would be entitled to recover, even if the contract still remained executory.

[1] We have quoted from the opinion in the former appeal to make it clear that the expressions there used in reference to section 68 of the Constitution were dictum and merely used arguendo. This is made patent when we take into consideration the language used in the opinion of the Lowndes County Case, supra, where, in discussing that, the Supreme Court said, "In the Montgomery County Case the sale of the county bonds was not concluded and the agreement dealt with was executory;" thereby, inferentially at least, saying that if the sale of the bonds had been concluded and the agreement had become an executed contract the result would have been different. This could not be so if section 68 of the Constitution should be held to be applicable to contracts such as is presented by this record.

We are further impressed that that part of the opinion dealing with section 68 of the Constitution is dictum because it seems to us the defendant was simply a purchaser of county property, and certainly was in no sense a "public officer, servant, or employé

or agent," and not, we think, a "contractor," within the meaning of the section of the Constitution under consideration.

In a general sense, every person who enters into a contract may be called a "contractor," yet the word has come to be used with special reference to a person who, in pursuit of an independent business, undertakes to do a specific work for other persons, using his own means and methods without submitting himself to their control in respect to all its details. As was said in Caldwell v. A. B. & A. R. Co., 161 Ala. 395, 49 South. 674:

"The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

This view of the law is sustained by all the decisions of other jurisdictions passing upon the meaning of the word "contractor," as used in Constitutions and statutes. Halstead v. Stahl, 47 Ind. App. 600, 94 N. E. 1056; Shearm. & R. Neg. §§ 76, 77; Carey-Lombard Lumber Co. v. Jones, 187 Ill. 203, 58 N. E. 347; Mullich v. Brocken, 119 Mo. App. 332, 97 S. W. 549; State v. Hartwell Co., 117 La. 144, 41 South. 444; State v. McNally, 45 La. Ann. 44, 12 South. 117; Herbert v. Rockland County, 64 Misc. Rep. 352, 118 N. Y. Supp. 358; Jann's Adm'r v. McKnight & Co., 117 Ky. 655, 78 S. W. 862; Poor v. Madison River Power Co., 38 Mont. 341, 99 Pac. 947; In re Hudson Water Works, 111 App. Div. 860, 98 N. Y. Supp. 33; Cantera v. Trustees, Eighth Street Baptist Church, 3 Boyce (Del.) 461, 84 Atl. 1035; Pittsburgh Construction Co. v. West Side Belt R. Co., 232 Pa. 578, 81 Atl. 884; Pittsburgh Plate Glass Co. v. Peters Land Co., 123 Ga. 723, 51 S. E. 725; Henderson v. Pelham Hod-Elevating Co., 126 App. Div. 639, 113 N. Y. Supp. 989; Friedman Co. v. Hampden County, 204 Mass. 494, 90 N. E. 851; In re Unger, 1 Okl. Cr. 222, 98 Pac. 999; Caulfield v. Polk, 17 Ind. App. 429, 46 N. E. 932. And in Attorney General ex rel. Zacharias v. Board of Education, City of Detroit, 154 Mich. 584, 118 N. W. 606, it was held that a superintendent of public schools was not a contractor, within the meaning of a constitutional provision similar to ours. The contract in the instant case was simply one of purchase and sale of county bonds, both parties dealing at arm's length and assuming no other obligation toward each other than the transfer of the property and the payment of same according to the agreement, and in line with the authorities cited the defendant would not be a "contractor," within the meaning of our Constitution.

In our opinion section 68 relates entirely to the power of the Legislature or a county or municipality to grant "extra compensation, fee, or allowance" for personal services rendered by any "public officer, servant, em-

ploy6, agent, or contractor" of the county. The words "extra compensation, fee, or allowance" are used in the same sense, that is, remuneration for services rendered and the object of section 68 is to prevent the payment of remuneration for services already rendered, or for services contracted to be rendered. If section 68 had been held to be applicable to the facts in this case the Supreme Court would not have remanded the cause on former appeal, for the reason that this section of the Constitution is a limitation on the power of a county or municipality to grant additional compensation fee or allowance for services under a contract after services performed or contract made, and in such event would prevent a modification of the contract, even on a sufficient consideration which would have this result. Montgomery County v. New Farley National Bank, supra.

Section 100 of the Constitution of 1901 is a limitation upon the power of the Legislature, and has no application to the contracting powers of counties. It is too obvious for argument that this provision was not intended as a limitation upon county commissioners in dealing with the thousands of contracts made in conducting the public business, in which some latitude must be allowed to meet the conditions constantly arising and some reliance placed upon the ability and integrity of public servants. In this transaction the board of revenue was dealing with the business affairs of the county, in which the board was the agent of the corporation and bound the corporation just as the agents of any other corporation. Mobile Co. v. Williams, Judge, 180 Ala. 639, 61 South. 963; Montgomery County v. Pruett, 175 Ala. 394, 57 South. 823.

[2] This, then, leaves the case to be decided by general rules of law applicable to contracts between parties, unrestrained by constitutional enactment, in which the county of Montgomery, in its corporate acts regarding the sales of these bonds, acts through its board of revenue, which is a court of record, made so by statute, and a court of record speaks only through its records. A written memorial is the only evidence which other courts can receive of its proceedings, whether it is of the exercise of judicial or of mere ministerial authority and duty. Wade v. Odeneal, 14 N. C. 423; Franklin County v. Richardson (Sup.) 79 South. 384.[1] In indorsing the principle above announced, Chief Justice Brickell, in the case of Speed v. Cocke, used this language:

"It is this memorial which imparts absolute verity and forecloses controversy." Speed v. Cocke, 57 Ala. 209–216.

This rule seems to have been followed in the following cases in Alabama: Mobile County v. Maddox, 195 Ala. 336, 70 South. 259; Smith v. McCutchen, 146 Ala. 455, 41 South.

619; Greenville v. Greenville Waterworks, 125 Ala. 643, 27 South. 764; Crenshaw County v. Sikes, 113 Ala. 626, 21 South. 135; Perryman v. Greenville, 51 Ala. 507; and also in text (20 Am. & Eng. Ency of Law, p. 510), which text is supported by many decisions of last resort. Therefore the testimony of Farley was not admissible for the purpose of adding something to the record of the court which did not appear and had never been a part of its minutes as fixing the executory agreements between the plaintiff and defendant with respect to the obligations under the contract of purchase. The recital of the minutes would determine the right of the parties in a suit to enforce the executory contract. But the defendant, pleading in short by consent, says, in effect, that, while the contract had been executory, it had become in all things executed, and that by receiving the money and making delivery of the bonds at the times and in the manner it did, in accordance with the modified agreement as shown by the several resolutions of the board under date of May 22, the plaintiff is now precluded from saying that the contract was not validly modified.

When this case was on appeal to the Supreme Court (Montgomery County v. New Farley National Bank, supra), the case then presented was that of a suit on an executory contract solely, and so held to be by the Supreme Court in Brown v. Lowndes County, 201 Ala. 437, 78 South. 815, 816, as hereinbefore referred to. There can be no doubt that the board of revenue had the authority to make the contract for the sale of the bonds in the first instance, and, while the contract remained executory, to have made a modified contract upon a sufficient consideration, and when so made the modified contract became the contract of sale. Creek Co. v. Speer et al., 124 Ark. 337, 187 S. W. 315. It is perfectly clear from the evidence, and in fact without dispute, that it was the modified contract that both parties acted upon and consummated as to every particular. Where this is the case, the consideration, even if lacking in the beginning, relates back to the inception of the contract and makes it binding upon the parties. We quote from Elliott on Contracts, as follows:

"In case a contract has been so far performed by one of the parties that the other party has received all that he contracted for, the consideration, even if lacking at the beginning, attaches and relates back to the inception of the contract and makes it binding on the parties." 1 Elliott on Contracts, § 202; Lamb's Estate v. Morrow, 140 Iowa, 89, 117 N. W. 1118, 18 L. R. A. (N. S.) 226.

This rule finds support in the following cases: Brown v. Lowndes County, 201 Ala. 437, 78 South. 815; Russell v. Jones, 101 Ala. 261, 13 South. 145; Electric Co. v. Rust, 117 Ala. 690, 23 South. 751; Hertz v. Montgomery Journal Co., 9 Ala. App. 178, 62 South. 564.

---

[1] 202 Ala. 46.

It being already held that the board of revenue had the authority, if a consideration had been shown, to make the modified contract, it is a general principle of almost universal application that it also has the power to ratify and make valid an attempted effort to do so, although it may have been done defectively and informally, and in some cases even fraudulently, in the first instance. Hutchinson & S. Ry. Co. v. Board of Com'rs of Kingman County, 48 Kan. 70, 28 Pac. 1078, 15 L. R. A. 401, 30 Am. St. Rep. 273; Mills v. Gleason, 11 Wis. 470, 78 Am. Dec. 721; Kneeland v. Gilman, 24 Wis. 39; Houfe v. Fulton, 34 Wis. 618, 17 Am. Rep. 463; Peterson v. N. Y., 17 N. Y. 449, 453; State v. Pawnee County Com'rs, 12 Kan. 426, 439.

The merged, or modified, contract was shown by the minutes of the board of revenue, and the testimony of Farley was admissible to show its consummation. With this testimony in, the case presented is that of an executed contract where the whole matter has been consummated and disposed of according to the interpretation given it by both parties during a period while harmonious and practical construction reflects that intention, at which time the parties were far less liable to have been mistaken than when subsequent differences have impelled them to resort to law and one of them seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions. 6 R. C. L. 853; McGowin Lumber & Export Co. v. Camp Lumber Co.. 16 Ala. App. 283, 77 South. 433.

[3] From what we have held in the foregoing opinion it follows that the trial court erred in rendering judgment for the plaintiff, and on the facts should have rendered a judgment in favor of the defendant. All of the facts being before this court, it will proceed to render such judgment as the lower court should have rendered. The judgment of the lower court is reversed, and a judgment will here be rendered in favor of the defendant.

Reversed and rendered.

Affirmed April 6, 1920, on authority of Ex parte County of Montgomery, In re New Farley Nat. Bank v. County of Montgomery, 203 Ala. 654, 84 South. 815.