# Central Railroad & Banking Co. *v.* Cheatham.

*Action for Reward, by Police Officer against Corporation.*

1. *Offer of reward as contract.*—The public offer of a reward for the arrest of any person committing a specified offense, with proof to con-

[Central Railroad & Banking Co. v. Cheatham.]

vict, is a conditional promise in favor of any person who complies with its terms, and, not having been revoked, becomes a binding contract on performance of the specified terms.

2. *Offer of reward by corporation, acting through superintendent.*—A railroad corporation has authority, necessarily incident to its business and the protection of its property rights, to offer a general standing reward for the arrest and conviction of persons who may obstruct its track, or other offenders against its property rights; and this may be done by the superintendent, without express authority conferred by a resolution of the board of directors.

3. *Same; hand-bill construed as act of corporation.*—A printed hand-bill, offering a reward for the arrest of any person or persons, with proof to convict of maliciously obstructing the tracks of a railroad company, whose name is stated in the heading, signed "*T. D. Kline, sup't*," is on its face the act or offer of the corporation, acting by and through its superintendent

4. *Same; evidence showing that superintendent acted officially.*—For the purpose of showing that the superintendent, in publishing said hand-bill, his signature being printed, acted in his official capacity, it is permissible for the plaintiff, suing to recover the reward, to prove that, having written and sent a letter by mail to the superintendent, he received by mail, a few days afterwards, a copy of the printed hand-bill, in an envelope which purported to come from the office of the superintendent, and to be on official business, the address being in the handwriting of his secretary.

5. *Same; ratification of superintendent's act by railroad company, and evidence relevant to.*—As tending to show that the officers of the railroad corporation had knowledge of the superintendent's act in offering the reward, and ratified by failing to repudiate it, the plaintiff may prove that the printed hand-bill was posted at various public places along the line of the railroad, by an employee who was under the control of the superintendent, and remained posted for several months, and until after the performance by plaintiff of the services for which he claimed the reward.

6. *Same; hand-bill construed as relating to both past and future offenses.* The offer contained in the hand-bill being general, "for the arrest, with proof to convict, of any person or persons for maliciously obstructing the tracks of this company," it applies equally to both past and future offenses.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by W. D. Cheatham, against the Central Railroad & Banking Company of Georgia, a foreign corporation, and the Montgomery & Eufaula Railway Company, a domestic corporation controlled by said Georgia corporation; and was commenced on the 15th September, 1887. The complaint contained only the common counts, each claiming $300; and the plaintiff sought to recover that sum as the amount of a reward which, as he insisted, the defendants had offered for the arrest of any person or persons, with proof to convict of having maliciously obstructed the defendants' tracks. The hand-bill offering the reward, which is copied in the opinion of the court, was

[Central Railroad & Banking Co. v. Cheatham.]

printed, and was dated at Macon, Ga., November 14th, 1885. In June, 1886, the plaintiff, who was a police officer in the city of Montgomery, procured the arrest of three negroes on a plantation near the city, and two of them were convicted of having maliciously obstructed the track of the Montgomery & Eufaula Railway Company, which ran through said plantation; and the plaintiff claimed the reward, on the ground that he had procured their arrest and conviction on the faith of the reward.   On the trial, numerous exceptions were reserved by the defendants to the rulings of the court on evidence, and also in the matter of charges given and refused; and these several rulings are now assigned as error, making in all thirty-three assignments.   The material questions presented are stated in the opinion of the court.

ARRINGTON & GRAHAM, for appellant.—(1.) The plaintiff ought not to have been permitted to testify that he had written a letter to Kline, without stating its contents.—*Railway Co. v. Jay*, 65 Ala. 113.   The presumption can not be indulged, that the circular was sent in reply to that letter.—*Roney v. Moss*, 74 Ala. 390.  (2.) The printed circular ought not to have been admitted as evidence.   If a railroad corporation has implied power to offer general standing rewards (which is denied), it was not shown that this circular was issued by authority of the defendant corporation, or subsequently ratified by it.   The authority of Kline to issue it was not shown, and on its face it is his personal obligation or promise. *Crutcher v. M. & E. Railroad Co.*, 38 Ala. 579; *Drake v. Flewellen*, 33 Ala. 106; *Dawson v. Cotton*, 26 Ala. 591; *Harwood v. Humes*, 9 Ala. 659; *Wailes v. Neal*, 65 Ala. 59; *Machine Co. v. Ashley*, 60 Ala. 496; *Riggs v. Fuller*, 55 Ala. 141; *Agee v. Williams*, 26 Ala. 644; *Bartlett v. Tucker*, 10 Mass. 336; *Minard v. Mead*, 7 Wend. 68.  (3.) The circular was never ratified or adopted by the defendant, and it is not estopped from denying the binding obligation thereof.—*Hugill v. Kinney*, 9 Oregon, 250; s. c., 42 Amer. Rep. 801; *Howe v. Ashley*, 60 Ala. 496; *Moore v. Robinson*, 62 Ala. 577; Taylor on Corporations, § 211.  (4.) The circular relates to future offenses only, and the reward is claimed for an arrest on account of an offense committed before it was issued.   A retroactive operation will not be given to it, unless it is plain that such was the intention of the person who issued it.   See analogous cases, in *Kidd v. Montague*, 19 Ala. 619; *Smith v. Kolb*, 58 Ala. 645.  (5.) What passed

between Cheatham and Kline, in relation to the witness Malloy, was not competent evidence.—*Blaine v. Express Co.*, 6 S. W. Reporter, 679, decided by the Supreme Court of Texas; Brick. Digest, vol. 3, p. 25, § 108. (6.) All the assignments of error are insisted on.

RICE & WILEY, *contra.*—(1.) Employing the dangerous agency of steam as a motive power, railroad companies are bound to exercise the greatest care and prudence to prevent accidents to travellers, and to the public generally; and they have all the incidental powers necessary to the exercise of this care and prudence. The superintendent is necessarily charged with the practical details of the management of the road, and may lawfully exercise all the powers which the board of directors could expressly confer on him. The courts will take judicial notice of the powers which pertain generally to his office, on the principle which applies in the case of a bank cashier, the captain of a ship, and the like.—67 Ala. 253; 78 Ala. 94, 592; 41 Amer. Rep. 318; 75 Amer. Rep. 314. A stranger, contracting with a railroad superintendent, in a matter pertaining to the ordinary duties of his office, is not required to prove his authority.—*Clark v. Taylor & Co.*, 68 Ala. 453; 15 Nev. 167; *Olcott v. Tioga*, 27 N. Y. 546; Wood's Railway Law, vol. 1, p. 440. (2.) The defendant is charged with notice of the official acts of its superintendent, and can not be heard to question his authority.—1 Mor. Corporations, 2d ed., § 424, notes; *Broderick's Will*, 21 Wall. 518; *Smith v. Sheely*, 12 Wall. 361; *Railway Co. v. Jay*, 65 Ala. 113; *U. S. Bank v. Dandridge*, 12 Wheat. 64; 7 Gray, 374; 48 N. H. 83. (3.) A railroad corporation has authority to offer rewards for the apprehension of trespassers and offenders, as a necessary means of protecting its property, which involves also protection to the lives of travellers. 1 Mor. Corp., § 724, notes; *Express Co. v. Patterson*, 73 Ind. 432. (4.) The plaintiff, having acted on the published circular, and rendered the services prescribed, had a right to recover the promised reward.—Bish. Contracts, § 331, ed. 1887; 4 Barn. & Ad. 621.

CLOPTON, J.—In June, 1886, the appellee arrested three individuals for the offense of having maliciously obstructed the railroad of the Montgomery & Eufaula Railway Company. One of them was discharged by the magistrate on the preliminary investigation; the other two were

committed, subsequently indicted, and convicted. Thereupon, appellee brought the suit to recover a reward claimed to have been offered by the appellants. The offer was by means of ·a printed circular, of which the following is a substantial copy:

⸰ "Central Railroad & Banking Company of Georgia; South Western Railroad Division; Montgomery & Eufaula Railway Company of Alabama.

" $300 Reward. For the arrest, with proof to convict, any person or persons for the malicious obstructing of the tracks of these companies.

"THEO. D. KLINE, Sup't.

The offer, though general, being for the arrest of any persons committing the specified offense, may be regarded a promise conditional on doing ' the proposed acts, and by performance becomes a binding contract, not having been previously revoked. To entitle the plaintiff to recover, it was incumbent on him to prove, not merely the arrest, but also that he furnished proof to convict. The nature and sufficiency of the proof so furnished need not be circumstantially shown; it is sufficient, if shown that he furnished the proof on which the conviction was had.

The material and important questions, on which the liability of the defendants depends, are raised by the objections to the admission in evidence of the circular. The objection involves the power of railroad corporations, and the authority of the superintendent, in the absence of express authority by the managing body, to offer such general rewards, the nature and extent of the offer, and the collateral rulings of the court on the admissibility of the evidence to show that the offer was made by the superintendent, and that it was adopted and ratified by the corporations. Without controverting the power of such corporations to offer rewards in special cases, it is contended that they have no implied power to offer a general standing reward. The argument is, that the State having enacted laws to protect their property, and being presumed capable of enforcing them, such implied power is unnecessary. The general principle will be conceded, that a corporation can do no acts, and make no contracts, except such as are authorized by its charter, or by the general law. All the powers, however, need not be conferred in express terms. There are implied powers incident to every private corporation—power to do such acts as are necessary or proper, directly or indirectly,

[Central Railroad & Banking Co. v. Cheatham.]

to carry the express powers into effect, and to enable it to answer the purposes of its creation. Among the powers incidental to all private corporations, is the authority to institute the established and appropriate legal proceedings for the enforcement of their rights and the protection of their property. It is of the highest importance and necessity, that the tracks of railroad companies, employing the powerful agency of steam in the transportation of freight and passengers by day and by night, shall be kept free from obstructions, and that every reasonable precaution to secure safety should be used by the officers or agents to whom this duty is intrusted. For the purpose of affording protection, the statute declares, that any person who wantonly or maliciously places any obstruction or impediment on a railroad shall be guilty of a felony. The enforcement of the criminal law is essential to the peace, good order, and security of the community. The institution of prosecutions against those who commit the offense of obstructing the railroad, is a legitimate and proper means of protecting the property of such corporations. The power to institute such prosecutions is a necessary implication from the nature of their business, and the necessities of their condition. The prosecution of persons accused of crime, by citizens whose rights have been specially offended, is encouraged in aid of the State authorities, to bring them to justice; and the offer of rewards for the apprehension of perpetrators of felonies when unknown, and of fugitives from justice when known, is the policy of the State.—Code, 1886, § 4746. There can be no question of the authority of the corporations to offer rewards and employ agents to detect and arrest violators of the criminal law enacted for their protection. On the ground of such authority is founded their responsibility for the willful and malicious acts of such agents, when done in executing the agency. Railroad companies ordinarily operate long lines, which render it impracticable to guard every section. Usually, obstructions are placed on the road beds under cover of secrecy, and the perpetrators are unknown. Prompt action is necessary to their detection. Delay after the commission of the offense renders the detection more difficult, and frequently defeats it altogether. A general reward tends to promote immediate and prompt vigilance and effort, is more efficient to prevent the commission of such offenses, and is not inconsistent with any law or public policy, nor foreign to the objects of the corporation. A general

[Central Railroad & Banking Co. v. Chhatham.]

standing reward may be offered by natural persons, and equally by corporations.—*Ricord v. Cent. & Pac. R. R. Co.*, 15 Nev. 167; *Am. Ex. Co. v. Patterson*, 73 Ind. 430.

But, though the corporation may have such implied power, it is insisted that the superintendent has no authority to offer a general reward, unless expressly granted by the board of directors. A corporation necessarily acts by representation, and the appointment of an agent includes power to do anything necessary and usual to execute the authority with effect. The scope and character of the business, which he is empowered to transact, is the measure of the authority of a general agent. The real authority of a superintendent is not restricted to such powers as may be conferred *in terms* by the board of directors, or by the by-laws, or by the usages of the corporation, but also includes such powers as are incident to his general duties and express authority. To him is intrusted, as the representative of the corporation, the general management and supervision of the running and operation of the road, and it is his general duty to take care that it is kept in safe condition. In the discharge of this duty, he may adopt any legitimate mode, and employ any means which are usually deemed effectual and proper to protect the road against obstructions. As we have shown that railroad corporations have the implied power to offer a general reward for the detection, apprehension and bringing to justice of persons obstructing the road, such authority is incident to the business and duties of the superintendent, and to the purposes of his department; consequently within the scope of his agency.—*To., Wa. & Wes. Railway Co. v. Rodrigues*, 47 Ill. 188.

The objection to the introduction in evidence of the circular is founded on the further ground, that the offer of the reward is, on its face, the personal obligation of the superintendent, and on the absence of evidence showing that it was intended to bind the defendants. The general rule undoubtedly is, that when a contract is made by an agent, in order to bind the principal, it should be made in his name, and purport to be his contract. An exception to the general rule is, that when an agent has incidental authority to make contracts in relation to his usual and general employment, both he and the principal may be personally responsible, though the contract may be made in the name of the agent, and that the true character of the transaction may be shown by

parol evidence.—*McTyer v. Steele*, 26 Ala. 487. It is true, no attempt was made to show by extrinsic evidence that the offer was intended to be the personal engagement of the defendants, and the mere affix of the abbreviation of superintendent to his signature does not, *prima facie*, impose a personal liability on them. But the form and manner of the signature are not conclusive. The offer itself furnishes its own interpretation. It purports by the heading to be made in the names of both defendants, and is in relation to and connected with their property and business. In such case, the signature of Kline as superintendent must be regarded as the signatures of the corporations by him. In form and terms, the offer is the joint and several contract of the defendants.—*Collins v. Hammock*, 59 Ala. 448.

For the purpose of showing that the offer was made by Kline as superintendent, the plaintiff was allowed to prove, against the objection of the defendants, that he wrote a letter to Kline, without stating its contents, which was sent by mail addressed to him at Macon, Georgia, his place of residence and business. A few days thereafter, he received by mail the printed circular, inclosed in an envelope, postmarked Macon, Georgia, on which were printed the words "Official business; Office of Superintendent," and the names and description of defendants as they appear in the circular; and also that, after the arrests, in an interview with Kline, the plaintiff stated that he wished one Malloy, who was in the employ of one of the defendants, as a witness at the trial of the accused persons, who Kline promised should be present, and that he was present at two terms of the court. That Kline was superintendent of the south-western division of the Central Railroad & Banking Company, and of the Montgomery & Eufaula Railway Company, which was part and parcel of the former, were admitted facts. His name as affixed to the circular, was printed, which rendered the positive proof of his signature impracticable, and resort to circumstantial evidence compulsory. The printed circular having been sent by mail, in response to a letter directed to the superintendent, and in an official envelope addressed in the handwriting of his secretary, the presumption is, in the absence of rebutting evidence, that it was an official transaction. The facts and circumstances above stated were relevant and proper to be considered by the jury, in determining the question whether the offer was made by the defendants, through Kline as their superintendent.

Central Railroad & Banking Co. v. Cheatham.]

When an act is done without authority, under an assumed agency, it is the duty of the principal, if he would avoid personal responsibility therefor, to disavow and repudiate it in a reasonable time after information of the transaction.—*Mo. & Mont. Railway Co. v. Jay*, 65 Ala. 113. It would be unjust to permit plaintiff to expend his time, labor and skill, in detecting, arresting and procuring proof to convict, on the faith of the offer of reward, and then allow defendants, if cognizant of the offer, to disavow the obligation, after receiving the benefits, under the pretense of want of authority. On the question of ratification, the facts that the circulars were posted at various public places on the line of the railroad, by direction of an employee of the defendants, who was under the control of the superintendent, and remained posted for about three months, and until after the rendition of the service, were proper to go to the jury, as tending to show that the officers or agents of defendants were cognizant of the offer.—*Kelsey v. Nat. Bank*, 69 Penn. St. 426.

It is further insisted, that the offer of the reward was prospective, and did not apply to the arrest, with proof to convict, persons who had committed the offense previously to its date. While the offer may be largely preventive in its nature and purpose, prevention may be rendered as effectual by industrious efforts to bring to justice those who have already committed, as by causing the arrest and punishment of those who may thereafter commit the offense. The words, "for the malicious obstructing of the tracks of these companies," were used to designate the special offense, and were not intended to confine the reward to the commission of future, to the exclusion of past offenses. Its terms are broad enough to embrace both; but, if it should be limited to either, the reasonable construction would be in favor of its application to offenses committed, and not solely anticipative of future commissions. We discover nothing in the terms of the offer which authorizes the construction contended for by appellants.

The rulings and charges of the court are in accord with the foregoing principles.

Affirmed.