# Hertz *v.* Montgomery Journal Publishing Co.

*Assumpsit.*

(Decided April 17, 1913.    62 South. 564.)

1. *Pleading; Special; Replication; Sufficiency.*—The pleadings considered and it is held that if any one or more of defendant's special pleas is good, and neither one of plaintiff's special replications is a sufficient answer to it, as tested by the demurrers, the defendant was entitled to final judgment, since the truth of all his special pleas were confessed by plaintiff's special replication of confession and avoidance, these never having been traversed, either

[Hertz v. Montgomery Journal Publishing Co.]

by a specific or general replication, and the rulings of the court on the pleadings were error without injury.

2. *Contracts; Voting Contest; Withdrawal of Offer.*—An offer by a newspaper of prizes to contestants receiving the greatest number of votes, a certain number of votes being given with each subscription, is not in itself irrevocable, but may be withdrawn at any time before it has been accepted by something being done in reliance upon it; for until accepted it does not become a binding contract.

3. *Same; Breach; Modification.*—Where the newspaper announced a voting contest for prizes,- and offered fifteen thousand votes if certain subscriptions were sent in by the contestant, it was a breach of the contract for it to increase before the close of the contest the number of votes to twenty-three thousand to be given for such subscription, after a contestant had accepted the order by sending in subscriptions, since it might enable another contestant to win . the prize with a less number of actual subscriptions.

4. *Same; Modification.*—Parties are at liberty to alter or modify at pleasure the terms of an executory contract between them, with or without writing, and without any new consideration for the change other than mutual assent.

5. *Same; Assent.*—The assent necessary to a modification of an executory contract may be expressed or implied from the conduct of the parties, and expressly or impliedly involve a waiver of any right either party might have had under the original contract, but for the new agreement.

6. *Same.*—Where a newspaper originally offered in a voting contest 15,000 votes for each subscription turned in by a contestant, and breached the agreement by increasing the number of votes to 23,000 for such subscriptions, a contestant accepting the original agreement assented to the modification and is bound by it if she proceeds under the new offer, and accepts a second prize, although if the vote had not been increased she would have won the first prize.

7. *Same; Estoppel.*—A party to a contract may, by his conduct estop himself from denying that he assented to a modification of the contract, if his conduct is such as to be inconsistant with the right to stand on the original contract.

8. *Same; Breach; Remedy.*—Where a newspaper instituted a voting contest agreeing to give 15,000 votes for each subscription obtained by a contestant, and a contestant accepted the offer and sent in subscriptions and received the stated number of votes, and sometime before the close of the contest, the newspaper increased the number of votes for each such subscription to 23,000, the contestant had four remedies for the breach. (1) rescission, and an action on quantum meruit for services rendered; (2), an action for breach of the special contract; (3) saving her rights under the original contract by protest, and proceeding and relying wholly on the old contract; and (4) accepting the new contract and waiving the old.

9. *Same; Breach; Defense.*—Where a newspaper instituted a voting contest by giving a certain number of votes for subscription, and a contestant alleges a breach in that the newspaper permitted

[Hertz v. Montgomery Journal Publishing Co.]

another contestant to purchase votes with money and not subscriptions, such contestant cannot complain when she did the same thing.

10. *Accord and Satisfaction; Compromise and Settlement; Receipt.*—Where a voting contest was conducted by a newspaper, 15,000 votes being given for each subscription turned in by a contestant, and the contract was breached by increasing the number of votes for said subscription to 23,000, a contestant accepting a second prize, giving a receipt therefor, stating that the amount received was in full settlement of the second prize, made an accord and satisfaction of any right she might have to the first prize, since she was not entitled to both prizes, and a receipt operates according to the intention of the parties.

11. *Same; Rescission; Penalty.*—If an acceptance and receipt was procured under mistake of fact, or through fraud, the plaintiff not knowing at the time that she was entitled to the first prize, upon discovery of the mistake or fraud she could avoid the effect of her acceptance and receipt only by restoring or offering to restore to defendant the second prize, and demanding the first, and upon refusal, could maintain a suit provided she had not assented to a modification while it was still executory.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Assumpsit by Sophia Hertz against the Montgomery Journal Publishing Company on the common counts, and under a special contract. Judgment for defendant and plaintiff appeals. Affirmed.

LETCHER, McCORD & HAROLD, for appellant. The main question in this case is whether the pleas of appellant were sufficient as pleas of accord and satisfaction, and appellant contends that they were insufficient because not in full settlement and satisfaction of appellant's demand, being merely in full settlement of the second prize.—1 Cyc. 312ffi 332, et seq; 87 Ill. App. 586; 62 L. R. A. 762; 49 Mo. App. 556; 29 Vt. 1; 34 Vt. 201; 1 Enc. P. & P. 77 and 80. The 7th plea was even more defective than the others.—*Pearson v. Thomason,* 15 Ala. 700; *Hodges v. Tennessee I. Co.,* 123 Ala. 573. No estoppel or waiver can be had unless full knowledge of all the facts are had at the time of said estoppel.—29 A. & E. Enc. of Law, 1093, et seq. There can be no

[Hertz v. Montgomery Journal Publishing Co.]

modification without the assent of both parties.—9 Cyc. 593. A consideration must be shown.—9 Cyc. 593. Counsel discuss the other assignments of error, but without further citation of authority.

HILL, HILL & WHITING, for appellee. Plaintiff is not entitled to recover for two reasons. 1st, she continued under the contract after its terms were changed, and is therefore bound, and 2nd, she was awarded the second prize, and accepted in settlement thereof the sum of $500.—*Hand L. Co. v. Hall*, 147 Ala. 561.

THOMAS, J.—This record is incumbered with a large amount of unnecessary pleading. The complaint as filed by the appellant (plaintiff below) contains in all eight counts, three of which were the common counts and five of which are special counts, setting up in varying phraseology several alleged breaches of a newspaper contest conducted by the appellee, in which appellant was a contestant. All the demurrers, containing some 49 grounds, to the complaint, were overruled; whereupon the defendant filed 24 pleas, the first 2 being the general issue and the others special pleas. A large number of the latter embody substantially the same defense, and differ only in verbiage and arrangement of allegation. The plaintiff moved to strike them all, from 6 to 24 inclusive, upon five different grounds, which motion was overruled. She then demurred, assigning some 31 general grounds in all. Upon the overruling of all her demurrers, she then filed 3 special replications of confession and avoidance, to each of which a demurrer was interposed by defendant and sustained by the court. The plaintiff declining to plead further, judgment was rendered in favor of defendant. The plaintiff upon this appeal assigns 39 grounds of error—the first 18 being

predicated upon the action of the lower court in overruling her motion to strike defendant's pleas, the next 18 upon its action in overruling her demurrers to defendant's pleas, and the last 3 upon its action in sustaining defendant's demurrers to her replications.

It is clear from the foregoing recital as to the condition of the pleading that if any one or more of defendant's special pleas is good, and neither one of plaintiff's special replications is a sufficient answer to it, as tested by the demurrers, the defendant was entitled to the final judgment which it obtained, since the truth of all his special pleas were confessed by plaintiff's special replications of confession and avoidance and never traversed either by a specific or general replication.—Code, § 5338; 16 Ency. Pl. & Pr. p. 542. If, therefore, the defendant on any plea was entitled, as pointed out, to the judgment rendered, the error of the court, if any, in its rulings on the other pleadings, was error without injury, and need not be considered.

There was no trial, as said, on the merits, but the salient facts are fully stated in the pleading. The basis of the action is the breach of a special contract, arising, as so appears, in the following way, to wit : "The defendant, the Montgomery Journal Publishing Company, is the owner and publisher of a newspaper in the city of Montgomery, Ala., known as the Montgomery Journal, and with a view and for the purpose of increasing the subscriptions to the paper it, by an offer to the public contained in an advertisement in the columns of the paper, inaugurated, or instituted, a voting contest, whereby it offered a first prize of $1,500 in cash to the woman who received the largest number of votes between the commencement and close of the contest (January 25 and March 14, 1910, respectively, being the dates fixed), and a second prize of two trips to Europe

[Hertz v. Montgomery Journal Publishing Co.]

to the woman who within such time received the next largest number of votes—agreeing to allow, as the offer did, each contestant or candidate 15,000 votes for each new cash subscription for a year to the daily Montgomery Journal secured or procured by such contestant or candidate during the time.

Like a private proposal, a public proposal, as this was, is revocable, and may be withdrawn at any time before it has been accepted by something being done in reliance upon it; for until acceptance it does not become a contract.—7 Am. & Eng. Ency. Law, 137-138; *Gen. R. R. Co. v. Cheatham*, 85 Ala. 292, 4 South. 828, 7 Am. St. Rep. 48. The plaintiff, however, alleges that she accepted the offer and proceeded under it in the work of securing subscriptions for the paper, which were turned in by her to the defendant company, whereupon, it appears, she was credited each time with, or rather received, the proper number of votes—15,000 for each of such new subscriptions so obtained. Thus the contest proceeded until about three weeks before the date, March 14th, fixed, as said, in the original offer for its close—when defendant announced in the same public manner in which the original offer had been proclaimed that from that date to the close of the contest, March 14th, each candidate or contestant would be thereafter allowed 23,000 votes for each new cash subscription for a year, instead of 15,000, as proposed in the original offer. This conduct on the part of the defendant in modifying or changing the original offer was a repudiation of it in a material particular, and clearly amounted to a breach of the contract arising under it as a result of plaintiff's previous acceptance of it.—7 Am. & Eng. Ency. Law. 149; *Worthington v. McGarry*, 149 Ala. 255, 42 South. 988. On the faith of that offer she had parted with a consideration, in that under it she had

rendered services, not only onerous, perhaps, to herself, but valuable to the defendant, in procuring subscriptions for its paper. That offer, when stripped bare of the voting feature and analyzed, amounted to this, and nothing more: An offer by the defendant to pay $1,500 to the woman who secured the greatest number of new one-year cash subscriptions to the daily Journal within the time named, and an offer to pay the value of two trips to Europe to the woman who, within such time, secured the next greatest number. The voting feature, veiling the proposition, did not in the least alter it, except to furnish an indirect, but more interesting, method of determining the final result; for each of such subscriptions was to be counted as 15,000 votes. In the end, therefore, the one who had secured the greatest number of subscriptions had as a result the greatest number of votes, and consequently would have won the prize. The changed offer rendered it possible, however, for a contestant to win the prize, who had not during the whole time of the contest secured the greatest number of subscriptions. As an illustration of the truth of this statement, let us assume that, at the time of the change or increase by defendant of the number of votes for subscriptions, the plaintiff was the leading contestant, and up to then had procured 10 subscriptions and received as a consequence 150,000 votes, and that her next highest competitor had procured up to that time 5 subscriptions and received as a consequence 75,000 votes. If the offer had remained unchanged—that is, if the number of votes for each subscription had continued the same to the close of the contest—plaintiff, without securing another subscription would have won the prize, unless her next highest competitor secured after that at least five subscriptions, or some other competitor more than five. By increasing the number of votes for each

subscription from 15,000 to 23,000, however, it would have been necessary for the next highest competitor to secure only four new subscriptions in order to have votes in excess of plaintiff's—assuming that plaintiff failed in her efforts to get further subscriptions. Thus, under the changed offer, it is seen that plaintiff's competitor would have won the prize by securing only 9 subscribers during the whole time of the contest over plaintiff, who had secured 10, during such time, and who would, therefore, have been entitled to the prize under the original offer. Of course, the change still left it possible, even probable, that the contestant who, during the whole time, had gotten the greatest number of subscriptions, would win the prize; yet, as said, the other was also made possible by the change, as pointed out in the illustration. Which would happen depended upon future contingencies—the relative success of the contestants in securing subscriptions after the change. The change nevertheless amounted, as said, to a breach of the original contract with plaintiff; but of such a nature in and of itself as to require of plaintiff an election as to whether she would stand on the original offer or consent to the modification and take her chances under the new. She could not consistently and rightfully do both, because they were not separate and independent, but each was a part of the other—the latter merely a modification of the former. All votes that had been received by every contestant under the old scale were to be retained and added to those that might be obtained under the new.

Upon the occurrence of the breach, four courses were, therefore, open to the plaintiff, by three of which she could assert her rights under the original offer, and by one of which she could waive those rights and take her chances under the new offer. First, upon the happening

of the breach, she could have treated it as putting an end then to the whole contract, and sued defendant on the common count for work and labor done and recovered under an implied contract on a quantum meruit for the value of the services she had actually performed in securing subscriptions for defendant's paper and otherwise; or, second, she could have sued the defendant for a breach of the special contract and recovered such damages as she had sustained by reason thereof, though the measure of such damages would not have been the value of the prize offered, since it was a pure speculation as to whether or not she would get it.—*Worthington v. McGarry*, 149 Ala. 255, 42 South. 988; 7 Am. & Eng. Ency. Law. 152. Third, she could probably have kept the contract alive by announcing to the defendant that she would not consent to its change or modification and by continuing to secure subscriptions, tendering them to defendant, under it, refusing the increased votes, and demanding that her rights be determined under the terms of the original offer. If under its terms it appeared at the close of the contest that she was entitled to the first prize, which was awarded to another under the changed offer, she could have sued the defendant for this final breach of the contract and the measure of damages would have been the full value of the first prize.— 7 Am. & Eng. Ency. Law, 152; *Lake Shore R. Co. v. Richards*, 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33; *Zuck v. McClure*, 98 Pa. 541. Fourth, and lastly, she could waive the first breach, and all rights under the contract as it originally was, by consenting to the change made in it and agreeing to take her chances under the offer as modified.

Parties are at liberty to alter or modify at pleasure the terms of a contract between them, so long as it is executory, with or without writing, and without any

new consideration for the change other than that of mutual assent.—*Andrew v. Tucker,* 127 Ala. 612, 29 South. 34; *Cornish v. Suydam,* 99 Ala. 621, 13 South. 118; *Robinson v. Bullock,* 66 Ala. 548; *Brigham v. Carlisle,* 78 Ala. 243, 56 Am. Rep. 28; *Stewart v. Cross,* 66 Ala. 22; *Badders & Britt v. Davis,* 88 Ala. 367, 6 South. 834; *Young v. Fuller,* 29 Ala. 464; *Pioneer Co. v. Nonemacher,* 127 Ala. 523, 30 South. 79.

Such assent may be express or it may be implied from the conduct of the parties, and expressly or impliedly involve a waiver of any right either party might have had under the original contract, but for the new agreement. Authorities, supra.

Furthermore, even if a party does not actually assent to a change or modification made by the other party, she may so act as to estop herself from denying that she assented; and will do so if her conduct after the change or modification is such as to be inconsistent with a right to stand on the old contract. It appears that the plaintiff continued in the contest after the change, without protest, retaining the votes she had received under the old offer, 15,000 for each subscription, and receiving, under the new offer, 23,000 votes for each subsequent subscription she obtained, so credited, to her knowledge, as the subscriptions were turned in; that upon the close of the contest she was invited among other contestants to select one of the judges to ascertain and declare the final result, which she did, making no protest, but accepting, as noted, the increased number of votes that she was entitled to only upon the condition of her agreeing to the new offer; that the judges counted the ballots and the result was that plaintiff received next to the highest number of votes, which entitled her to the second prize, to wit, two trips to Europe; that she and defendant agreed on $500 as the cost of these

trips, which was paid to her, and which she accepted and receipted for in full settlement of the second prize. Without restoring or offering to restore the second prize, she is now suing for the first prize, after crediting it with the amount received by her in settlement of the second prize, alleging that she would have received the first prize but for the change or modification of the offer, whereby 23,000 votes instead of 15,000 votes were allowed for each subscription subsequent to the change. Her course of conduct estops her now from saying that she did not assent or consent to the modification of the contract, whether she did or not; for she knowingly all along accepted the increased number of votes allowed her under the change and finally permitted her rights to be ascertained under the change, and participated in it by selecting one of the judges to that end, while the contract was still executory, and before either party to the contract knew what the result would be either under the new or under the old.

She cannot be permitted to stand upon both contracts; since the two are not separate and distinct, as before pointed out, then when she stands upon the one she concludes herself from ever afterward standing upon the other, and waives all rights she may have under it. An assent once given to the change made in the original offer at any time before the contract was executed cannot be subsequently withdrawn without defendant's consent; for such assent made the changed or modified offer the real contract between the parties, substituting it for the old and terminating of necessity all rights under the old.—Authorites supra.  Such contract remained executory until the result of the contest could be ascertained and known; for until the result was ascertained it could not be known to whom defendant was liable nor for what.  Of course, if such assent had

not been given until after the contract was executed in all particulars, except as to payment or delivery of the prizes by defendant, then such assent would have been without consideration and not binding.—*Andrews v. Tucker*, 127 Ala. 612, 29 South. 34; *Hodges v. Tenn. Co.*, 123 Ala. 572, 26 South. 490. If, therefore, the defendant had not assented to the modification of the contract, while it was still executory, but had so assented only after the result was ascertained and known by agreeing then to accept and accepting under it the second prize of $500, when the defendant in fact owed her $1,500, which he conceded and admitted, as first prize under the original offer, this acceptance on the part of the plaintiff would not have relieved defendant of his liability for the remainder due, in the absence of a written release or receipt signed by her discharging defendant.—*Hodges v. Tenn. Co.*, 123 Ala. 572, 26 South. 490. However, if her right to the first prize was in bona fide dispute and not conceded by the defendant, then her acceptance of the second prize tendered by him would amount to an accord and satisfaction of plaintiff's demand and relieve defendant from further liability, although plaintiff gave no written receipt or release, and although she may not have assented to the modification of the contract while it remained executory.—*Hand Lumber Co. v. Hall*, 147 Ala. 566, 41 South. 78.

That her right to the first prize was disputed by defendant follows unmistakably from the fact that he tendered plaintiff only the second prize. By this act of offering the second prize, under the circumstances under which it was offered, the defendant, in apparent good faith, denied her right to the first prize, for it is not even contended that she was entitled to both, and when, therefore, she accepted the second under these circumstances, it amounted to an accord and satisfac-

tion of the controversy.—*Hand Lumber Co. v. Hall,* 147 Ala. 566, 41 South. 78. Furthermore, it appears that she gave a written receipt at the time she accepted the second prize, stating that the $500 was accepted in full settlement of second prize. Receipts operate according to the intention of the parties (Code, § 3973), and this receipt must be construed as intended to be a receipt in full discharge of defendant's liability for first prize, since she was not entitled to both. It is sufficient, therefore, to defeat a recovery.—*Hodges v. Tenn. Co., supra.*

If such acceptance and receipt was procured under a mistake of fact or through fraud, the plaintiff not knowing at the time that she was entitled to first prize, then upon discovery of the mistake or fraud she could avoid the effect of her acceptance and receipt only by restoring or offering to restore to the defendant what she had received; that is, the second prize, and then demanding the first. Upon refusal of defendant to deliver it, she could then maintain this suit (*Rabbitte v. Ala. Great So. Ry. Co.,* 158 Ala. 433, 47 South. 573), provided she had not assented to the modification of the contract while still it was executory. It appears, however, that she did so assent, as hereinbefore pointed out; and it further appears that she has not restored or offered to restore the second prize, which she accepted and for which she receipted. Either fact is sufficient to defeat her recovery for the breach complained of.

As to the other breach complained of, to the effect that her competitor, who won the first prize, was allowed by the defendant, just before the contest closed, to put up in cash $1,150 and get credit for it in votes at the same rate as actual subscriptions turned in, plaintiff is in no better fix to complain than of the other breach we have hereinbefore discussed, for the reason, first, it appears that she also assented to this change

[American Central Insurance Co. v. Pepper.]

in the contract by taking advantage of it, doing the same thing her competitor did, by putting up $500 and getting a similar proportionate credit in votes; second, she failed to restore or offer to restore the second prize, which she accepted and for which she receipted as before discussed. Some of defendant's pleas fully and separately set up the defenses pointed out, none of which were traversed or denied. The replications of plaintiff, seeking to confess and avoid these pleas, properly fall on demurrer by defendant. Neither of them, for reasons hereinbefore considered, was an answer in law to the pleas.

The judgment of the lower court is affirmed.

Affirmed.