# Johnson, et al. v. McFry.

### Trover and Conversion.

(Decided April 8, 1915.   68 South. 716.)

1. **Appeal and Error; Review; Finding; Sufficiency.**—Where the case was tried by agreement without a jury and the court, on its own motion, made a special finding of fact, the sufficiency of such finding to support the judgment, will be reviewed on appeal as if there had been a special request for such finding.

2. **Landlord and Tenant; Renting; Interest in Crops.**—Construing §§ 4742, 4743 and 4792, Code 1907, it is held that where the landlord and tenant agreed that the landlord would furnish the land and mules, and the tenant would cultivate the land, and the crop would be divided, and it was subsequently agreed that the fertilizer would be purchased by the landlord on his credit, but was to be paid for out of the proceeds of the crop at the equal expense of both parties, whatever the relationship between the parties under the original agreement was, the agreement to share equally in the cost of the fertilizers made them tenants in common within the provision of § 4792, Code 1907, and each owned a one-half interest in the crop, subject to the lien of the other for supplies, etc.

3. **Contracts; Modification; Parol.**—So long as a written contract is executory the parties to it may alter or modify its terms by parol or in writing.

4. **Same; Consideration.**—So long as a contract is executory parties to it may modify it without any other consideration than that of mutual assent.

5. **Mortgages; Writing; Necesstiy.**—Under § 4288, Code 1907, an oral agreement by B, that his share of a crop should be good for a buggy for which M, went his security, gave M no contractual lien on B's portion of the crop.

6. **Landlord and Tenant; Lien; Supplies.**—Where B cultivated M's land under an agreement for a division of the crop, and M went B's security for a buggy, M had no lien for the price of the buggy on the crop, as the buggy was not furnished to aid in cultivating and gathering the crop, under § 4792, Code 1907.

7. **Mortgages; Conversion; Title to Support.**—Where M and B cultivated land under an agreement for a division of the crop that made them tenants

[Johnson, et al. v. McFry.]

in common thereof, and B executed a mortgage on his interest in the crop, and pursuant thereto turned over to the mortgagee a bale of cotton by depositing it in a warehouse, and M obtained possession of the cotton before the maturity of the mortgage by a detinue proceeding, sold it, and applied B's interest on a debt for which he had no lien, while ordinarily a mortgagee cannot recover in trover for a conversion of the property prior to the maturity of his mortgage, yet by a delivery of the cotton the mortgagee acquired title to B's interest therein and had such title and right to possession as would support trover.

8. **Same; Action on Case.**—If trover would not lie in such case an action in case would certainly lie in favor of the mortgagee.

9. **Tenancy in Common; Conversion.**—The sale of a chattel by one tenant in common without the consent of his co-tenant is a conversion for which trover will lie.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by J. E. Johnson and others, against James McFry in trover and conversion. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

See, also, the case of *Johnson v. McFry*, 13 Ala. App. 619, 68 South. 718.

CHARLES F. DOUGLASS, for appellant. BLACKWELL & AGEE, for appellee.

THOMAS, J.—The only assignments of error made relate to the conclusion and judgment of the trial court on a special finding of facts made by it, sitting, by agreement of the parties, without a jury.—Code, § 5359 et seq.

(1) No request for a special finding of the facts was made by either party, but the court, in the exercise of its discretion, made ex mero motu such a finding, which is set out in the bill of exceptions; and on appeal—its conclusion and judgment on the facts so specially found having been assigned as error—it becomes the duty of this court to examine and determine, in the same way as if there had been a request for such finding, whether or not such facts are sufficient to support the judgment. —*Sayre v. Weil*, 94 Ala. 470, 10 South. 546, 15 L. R. A. 544; *Brock v. L. & N. R. R. Co.*, 114 Ala. 432, 21 South. 994; Code, § 5361. There is no merit in the suggestion of appellee that the finding does not constitute a special finding.—*Lanford & Co. v. Mathis*, 9 Ala. App. 434, 62 South. 967.

(2) The action was by the appellant Johnson against appellee, McFry, and the complaint contained a count in trover for the alleged conversion by McFry of an undivided half interest in a certain bale of cotton that had been raised in the year 1913 on his place by one Brown, the one-half interest in which the plaintiff Johnson claimed under a mortgage executed to him by said Brown on February 22, 1913, covering the crops to be raised by said Brown during that year on the said premises of the defendant, McFry. The agreement between said Brown and McFry, under which said cotton was raised, the court found to be as follows (quoting from the special finding of facts), to wit: "During and for the year 1913 McFry and Brown made an agreement for the cultivation of a tract of land in Calhoun county, Ala., under which McFry agreed to furnish the land and a mule for the crop, and Brown agreed to furnish the labor, the crop to be divided equally. It was customary to use commercial fertilizers for making crops, and, under a contract such as that above described between McFry and Brown, it was customary for each party to bear half of the cost of the fertilizer from the respective shares of the crop. Some time after the above agreement for making a crop was had McFry and Brown had an understanding or agreement that 20 sacks of guano should be used in the crop, and McFry made arrangements to purchase the same, and it was purchased by McFry on the latter's credit. Brown then went to the merchant and hauled the guano, and used it in the crop. Then there was no understanding that each was to furnish half of the fertilizer, but there was an understanding that it was to be paid for out of the proceeds of the crop at the equal expense of both parties."

From these facts so found by the court it concluded that the relationship between McFry and Brown was one of hirer and hireling, under section 4743 of the Code, which, if true, vested in McFry the legal title to the crops, and in Brown only a lien upon them for the value of the portion of the crop to which he was entitled.—Code, § 4743.

In this conclusion as to the relationship between the parties we are of opinion that the court erred. The agreement between McFry and Brown that the guano should be paid for out of the crop before any division between them of the crop was tantamount to an agreement to divide equally between them the cost

of the guano; and even if the relationship between them under the contract as first made was that of hirer and hireling (which, it would seem, is not the case, however, since under that contract McFry agreed to furnish, not the land and team, which the statute requires as essential to that relationship, but only the land and a mule [*Tate v. Cody-Henderson Co.*, 11 Ala. App. 350, 66 South. 827]), yet that relationship, if before existing, was certainly changed, before the crops ever came into existence, by the subsequent modification of that contract in the new agreement to share equally the cost of the guano to be used.— *Williams v. Lay*, 184 Ala. 54, 63 South. 466; *Hendricks v. Clemmons*, 147 Ala. 590, 41 South. 306; *Haynes Mercantile Co. v. Bell*, 163 Ala. 326, 50 South. 311. See, also, *Johnson v. McFry*, 13 Ala. App. 619, 68 South. 718.

(3, 4) Parties are at liberty to alter or modify at pleasure the terms of a written contract between them, so long as it is executory, with or without writing, and without any new consideration for the change other than that of mutual assent.— *Hertz v. Montgomery Publishing Co.*, 9 Ala. App. 186, 187, 62 South. 564, and cases there cited. We are clear that the relationship between the parties was not that of hirer and hireling, under section 4743 of the Code, nor that of landlord and tenant, under section 4742 of the Code, but was that of tenants in common of the crop, under section 4792 of the Code, whereby each party owned the legal title to a half interest in the crop, subject to a lien of the other for any balance due "for provisions, supplies, teams, materials, labor, services, and money, or either, furnished to aid in cultivating and gathering such crops, under contract, or furnished when the interest of such crops requires it, in case of a failure of either to contribute the amount and means as agreed upon by the parties."—Code, § 4792; *Haynes Mercantile Co. v. Bell*, supra, and other authorities supra.

Clearly, therefore, we think McFry had a lien on Brown's portion of the crop for one-half of the cost of the guano furnished by McFry in the making of the crop, which lien is perhaps superior to plaintiff's mortgage, though this question is not before us.

(5, 6) The court found that McFry went Brown's security for a buggy purchased by Brown on credit and for Brown individually at a cost of $100, and that "Brown agreed with McFry

that his share of the crop should be good for the buggy." This agreement could not give McFry any contractual lien on Brown's portion of the crop for the price of the buggy, as it was not in writing (Code, § 4288; *Barnhill v. Howard,* 104 Ala. 412, 16 South. 1) ; and the statute cited (Code, § 4792) gave McFry no statutory lien therefor as a tenant in common, because it cannot be said that the buggy was furnished "to aid in cultivating and gathering the crop." It was found by the court that nothing else was furnished by McFry to Brown, except the guano and buggy mentioned, for the first of which McFry, as seen, had a lien, and for the latter, not.

(7, 8) It was further found that the corn which was raised was divided equally between Brown and McFry; that six bales of cotton were raised; that two of them, after being gathered and ginned, were sold by McFry with Brown's consent prior to September 11, 1913, McFry retaining half the proceeds with Brown's consent, but applying the other half (80.81), against Brown's consent, in payment of the buggy; that some time thereafter, and before September 23, 1913, Brown had another bale ginned, and turned it over to the plaintiff Johnson, under the latter's mortgage, by depositing the bale in a warehouse, but which bale the defendant, McFry, by detinue proceeding, to which plaintiff Johnson was not a party, got possession of prior to the bringing of the present suit, and sold, retaining one-half of the proceeds as his own, and applying the other half to the buggy debt; and this suit by Johnson is for the conversion by McFry of Brown's half-interest in this bale of cotton, covered by Brown's mortgage to Johnson.

(9) A sale by one tenant in common of the entire property in a chattel, without the consent of his cotenant, is a conversion for which trover will lie.—*Smyth v. Tankersley,* 20 Ala. 219, 56 Am. Dec. 193; *Steiner v. Tranum,* 98 Ala. 315, 13 South. 365; *Allen v. Harper,* 26 Ala. 687; *Perminter v. Kelly,* 18 Ala. 716, 54 Am. Dec. 177; *Sullivan v. Lawler,* 72 Ala. 74.

While it is true that the sale here was made prior to September 23, 1913, which was before plaintiff's mortgage, which did not mature until November 1, 1913, was due, and that ordinarily a mortgagee cannot recover in trover for a conversion done prior to the maturity of his mortgage (*Heflin & Phillips v. Slay,* 78 Ala. 180), yet, as to the half interest of Brown in

the bale of cotton in question, the plaintiff's title was complete before the conversion and before the maturity of the mortgage by the fact that before that time Brown had, as seen, turned over and delivered possession of it to plaintiff under the said mortgage and in partial payment and discharge thereof. This afforded plaintiff such a title and right to possession as would support trover. Besides, if it did not, the complaint contained a count in case, which would certainly lie.—*Heflin v. Slay, supra.*

The court erred, therefore, in finding and rendering judgment for defendant, and the judgment is consequently reversed.

Reversed and remanded.